Kuhl v. Martin.

---

RICHARD S. KUHL

*v.*

JACOB L. MARTIN and others.

A reference to a master was made by consent of complainant and the answering defendants, and the order of reference directed that notice of the reference be given to all the defendants in the suit. *Held*, that the order did not give leave to a defendant against whom there was a decree *pro confesso*, to come in before the master and set up, under the reference, a claim which ought to have been set up by answer.

---

On exceptions to master's report.

*Mr. G. N. Abeel*, *Mr. R. S. Kuhl*, and *Mr. G. A. Allen*, for Henry G. Cook, exceptant.

*Mr. Cortlandt Parker*, for Jennie E. Martin.

Kuhl v. Martin.

THE CHANCELLOR.

By an order in this cause, made on behalf of the defendant, Henry G. Cook, on the 21st of December, 1875, on a motion to dismiss the bill for want of prosecution, after reciting that answers had been filed in the cause by the Home Insurance Company, Henry G. Cook, Augustus Smith and his wife, and William Paterson, defendants, and that no other answers had been filed, and that the receiver appointed in this cause (*Kuhl* v. *Martin*, 11 *C. E. Gr.* 60,) had sold at public auction the property of which he was put in possession, for the benefit of those whom it might concern, and that the proceeds of the sale were then, or shortly thereafter would be, in the hands of the receiver, it was, by consent of the respective counsel of the complainants and answering defendants, referred to Frederick W. Stevens, Esq., one of the masters of this court, to ascertain, by such testimony as he should think proper and necessary, and report the priority of the claims of the respective claimants, parties in this suit, to that money; and that the receiver present his account of his receivership, under oath, before the master, who was to ascertain and report the amount of compensation proper to be allowed to him for his services; and that the master give to all persons who were parties to this suit, notice of the time and place of taking the testimony and settling the account of the receiver.

Under this reference the master proceeded to the discharge of the duties thereby imposed upon him, and on the 15th of April, 1876, reported that the judgments of the Hunterdon County National Bank stand first in order of priority as liens upon the oyster grounds which lie within this state; that the mortgage made to Henry G. Cook, and by him assigned to Charles Keen, trustee for Jennie E. Martin, stands first in order of priority as a lien upon the oysters taken from all the oyster grounds, without regard to whether they lie within or without this state, and is second in order of priority as a lien on the oyster grounds which lie within this state; that the judgment recovered by the Union

National Bank stands second in order of priority as a lien upon the oysters which were taken from the land lying within this state, and third in order of priority as a lien on the land; and that the judgment recovered by Richard S. Kuhl stands third in order of priority as a lien upon the oysters taken from land lying in this state, and fourth in order of priority as a lien upon the land.

As to the money arising from the sale of the great beds, which, in his opinion, lie out of this state, he suggests that none of the parties to this suit are entitled to it, and that if this court had no jurisdiction to sell the land because of its being without this state, the lien of the mortgage held by Mrs. Martin remains unimpaired; and as those who purchased it from the receiver get no title, it seems to be equitable under the circumstances, if the court confirms his judgment as to the locality of the land, to refund the money; but he adds that as to the oysters on that land, Mrs. Martin's mortgage was a lien upon them irrespective of locality, and they having been actually sold, she appears to be entitled to the proceeds. He further reports, that as to the oysters on the beds in this state, the Union National Bank and the complainant have a lien thereon by virtue of their levies which were not only upon the lands, but also upon the right to take oysters therefrom, and to plant oysters thereon. He also reports that, at the date of the report, there was due to the defendants, Henry G. Cook, on his judgments (those recovered by the Hunterdon County National Bank) $7,213.08; to the trustees of Mrs. Martin, on her mortgages, $4,655.65; to the Union National Bank of Rahway, on their judgment, $7,908.06, and to the complainant, on his judgment, $9,709.83.

To the report, both Henry G. Cook and Mrs. Martin have excepted on the following, among other grounds: That the master permitted testimony to be taken (and considered it) with reference to the claim of Mrs. Martin, who had neither appeared nor answered, nor in any way set up her claims in the suit; that he passed upon the question of jurisdiction, which was not referred to him nor raised in the suit; that his

Kuhl *v.* Martin.

decision on that subject was based on incompetent and insufficient evidence, and that he misinterpreted the order of reference which, if it admits of the construction put upon it by him, should be amended. He excepts also to the report that the levies of the Hunterdon County Bank were not on the oysters on the oystering grounds, but on the land only; and because he admitted incompetent, and refused to receive competent evidence on that subject and in reference to the location of the property.

On the other hand, Mrs. Martin excepts on the ground that neither of the executions and levies thereunder created any lien on either the oyster grounds or the oysters thereon.

Mrs. Martin, who had neither answered nor appeared in the cause when the order of reference was made, asks leave now to answer. The answer which she proposes to file, if permission is given, alleges her *bona fide* ownership, for valuable consideration, of the land and premises mortgaged by her and her husband to Henry G. Cook, by the mortgages for $4,000 and $2,500 respectively, at the time when those mortgages were given; that she executed those mortgages on that property (which, as she alleges, was her separate estate, not obtained by voluntary conveyance from her husband,) in order to enable Cook, by means of and with those mortgages, to obtain an assignment to himself of the Hunterdon County National Bank judgments; and that it was agreed that, in consideration thereof, the mortgages then held by him, and given to him by her husband and herself, should be, as they were, assigned to her.

Though the master was, by the order of reference, required to notify all the parties in the suit, whether they had appeared or not, it by no means followed that he was to entertain the claims of all parties to the suit who should present them, irrespective of the pleadings. It was intended that all parties in interest should have an opportunity to be present at the taking of the account, but it was not designed to disregard in this case the ordinary regulations of practice in this respect. Mrs. Martin had no standing in the cause

25

Kuhl v. Martin.

as a claimant under her mortgages. The bill directly and explicitly called in question her right to the very property a claim to which, as her separate estate, she now asks leave to set up. It alleged that the chattel mortgage, which she now claims to own by assignment to her trustee, was fraudulent, and prayed that it might be so decreed, and that the mortgage might be cancelled. Although a motion to dissolve the injunction was denied in the term of February, 1875, partly on the ground that she had not answered, and that the complainant was entitled to her answer to the matters charged in the bill in respect to the conveyances of property therein alleged to have been made to her, and as to the mortgages made by her and her husband to Cook, she did not answer nevertheless, and, on the 30th of November following, a decree *pro confesso* was entered against her. It is true the bill did require her to answer under oath, but that did not absolve her from the obligation to answer, and her failure to do so was attended with the usual consequences. The order of reference was made on the bill and answers. There is no evidence in the cause except that which was taken before the master on the reference. The bill having been taken as confessed against Mrs. Martin, the court was at liberty to proceed to a decree as between the parties who had appeared and answered.

In fact, the relation of the claims to each other, as to order of priority, had not, when the order of reference was made, been affected by the litigation. There was nothing in the cause to show that Mrs. Martin had any claim whatever upon the property in question. Her silence when she was called upon to answer, was proof that she had none. Moreover, it appears from the answer which she desires leave to file, that the mortgages held by Cook were given by her and her husband for the amount due upon the mortgage which Cook assigned to her, and that one object of the parties in giving the new mortgage, was to enable Cook, by means thereof, to obtain an assignment of the judgments of the Hunterdon County National Bank. It appears to

have been understood that he could use those mortgages as consideration for the assignment which Martin and his wife were desirous that he should obtain, in order that the judgments might be held by a friendly hand. The chattel mortgage appears to have been assigned, with the other mortgage on land, given to secure the same debt, to her trustee on the 28th day of May, 1874, the day after the date of the assignment of the judgments of the Hunterdon County National Bank to Cook. The two mortgages given by her and her husband to Cook, to be used in obtaining the assignment of the judgments, were made on the 3d of April, 1874, nearly two months before the making of the assignment of mortgages to Keen, as trustee for Mrs. Martin. To permit Mrs. Martin, under such circumstances, to obtain a priority over Cook, for the chattel mortgage assigned to her trustee, on the technical ground of defect in the levies under the Hunterdon County Bank judgments, would be palpably inequitable. She will not be permitted to answer.

But to consider the case as presented before and considered by the master. The judgments of the Hunterdon County Bank are by law entitled to priority, as far as the land in this state is concerned, over the mortgage of land assigned to her trustee, and if the levies under the executions thereon are valid, they are, by law, entitled to priority over the chattel mortgage also, for the judgments were recovered on the 5th of September, 1873, and the levies were made on the 10th, but the chattel mortgage was not filed until the 13th.

It is insisted, on behalf of Mrs. Martin, and the master so reports, that the levies under those judgments were valid as to part of the oyster grounds, (the part which is, in his opinion, in this state,) were not valid as to the rest, because he finds that it lies outside of the limits of this state, and that no levies were made upon the oysters which were on the grounds. For the reason before given the judgments in the hands of Cook (the levies were made under them before he took his assignment thereof) are, from equitable considera-

tions alone, if the validity of the chattel mortgage in the hands of Mrs. Martin were conceded and she *were* admitted to set up her claim against the judgments, entitled to priority over that mortgage in her hands. She could not successfully question, under the circumstances which this case would present, the right of Cook, under his judgments, to the proceeds of the sale of the personal property levied on, as against the mortgages in her hands. The proceeds of sale are in court to be administered, and neither the question of jurisdiction nor the question as to the validity of the levies at law as to the oysters, would be of any importance as between Cook and Mrs. Martin. The proof is that the levies were made by the under-sheriff, by the direction of Smith and Martin. He says they wished him first to levy upon their joint property, mentioning the one hundred acres of oystering grounds, in the immediate vicinity of which he and Smith and Martin were at the time. Mrs. Martin would not be in a position to successfully question Cook's right, in a court of equity, to so much of the proceeds of the sale of the oystering grounds and oysters as might be necessary for the satisfaction of the judgments. His right to the property which had been levied on under the judgments when he took the assignment, would be superior to hers. The other judgment creditors can claim no lien under their judgments superior to that of Cook's judgments on the lands, for it is undeniable that, as to the land in this state, his judgments are entitled to priority over all the other encumbrances, and if they are not valid liens upon some part of the oystering grounds, it is outside of the limits of this state; the levies under the other judgments are subject to the same objection, so far as the same property is concerned. If Cook has no lawful levy, they have none. But are the levies under the executions on his judgments invalid as to the oysters which were in this state, while the levies under theirs are valid as to that property? The levies under the executions on his judgments are upon " one hundred acres of oystering grounds in Raritan Bay, late the property of Merrit Martin,

deceased." Theirs are upon the oystering grounds, "with the right to take oysters therefrom or to plant the same thereon." The master reports that in the levies under Cook's judgments the oysters on the grounds were not included, but that they were embraced in the latter; that the levy on the right to take oysters from the grounds was substantially a levy on the oysters there. I am of opinion that a levy upon the oystering grounds was a levy not only upon the grounds, that is, the right of occupancy, but also upon the oysters that were then growing there; that a levy on an oyster bed (another name for oystering grounds) is a levy not only upon the oyster bed, but also upon the oysters which are in it at the time. The levy on the right to take oysters from the grounds and to plant them thereon, no more implies a levy upon the oysters on the grounds than does a levy upon the grounds merely. Nor am I satisfied that any part of the grounds in question lies outside of the limits of this state.

The evidence on the subject is not of such character as to be conclusive or satisfactory. But it appears that the receiver, after selling a large part of the oysters, advertised and sold the beds and remaining oysters together, the oysters with the beds. What the relative values thereof were, does not appear.

The purchasers have, for aught that appears to the contrary, converted the oysters to their own use. They have not been disturbed in their possession of the beds, and, except as the question was raised before the master, it does not appear that any ever was raised as to whether the beds were indeed within the limits of this state. They were not only supposed by the parties to this suit, and to the transactions involved therein connected with the beds, to be in this state, but, as far as appears, they were by common consent regarded as being in this state. I see no good reason for hesitating in distributing the money in the hands of the receiver on account of the jurisdictional question raised before the master. That question was not raised by the pleadings and is not in the cause. All of the exceptions on

the part of Mr. Cook to the master's report will be allowed, except the eighth, ninth, tenth, and eleventh, which are overruled. Cook will be entitled to his costs of the exceptions out of the fund. The fund will be distributed according to the views expressed in this decision. Cook will be entitled to preference for his judgments out of all the money in hand for distribution. No costs of the cause, except of the proceedings after and including the master's report, will be allowed, for the reason that the litigation instituted by the bill has terminated by consent of the parties. The costs of the master's report and the subsequent proceedings will be allowed out of the fund. If, after paying off Cook's judgment and the costs above awarded, there be any surplus, it will be paid over to the Union National Bank on their judgment.