143 N.J. Super. 548 (1976)
364 A.2d 15
TRUSTEES OF THE CLIENTS' SECURITY FUND OF THE BAR OF NEW JERSEY, PLAINTIFF,
v.
GEORGE AVERY BECKMANN, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 30, 1976.
*551 Mr. Lawrence Weintraub, custodial receiver of the estate of George Avery Beckmann, pro se.
Mr. Maureen McGrath, Deputy Attorney General, for plaintiff (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Joseph P. McManemin for Edith Beckmann.
Mr. Mitchell S. Camp (Messrs. Gladstone, Hart, Mandis, Rathe & Shedd, attorneys), for Josephine Washburn.
GELMAN, J.S.C.
The issues presented here concern questions of priority in the payment of claims of creditors from a fund in court. The facts are not in dispute.
George Avery Beckmann is an attorney at law of the State of New Jersey who is presently under indictment for the embezzlement of funds from a client. The indictment was handed up on April 17, 1975 and avers that on or about December 23, 1974. Beckmann embezzled $6900 from certain clients. On May 22, 1975 the trustees of the Clients' Security Fund (trustees) filed a complaint against Beckmann in this court pursuant to R. 1:28-8 for the appointment of a custodial receiver of the entire estate of Beckmann, including his law practice. A temporary restraining order was signed on that date which, among other things, restrained all persons from commencing or prosecuting any action or obtaining any judgment, preference or lien against the assets of Beckmann. *552 On May 30, 1975 a custodial receiver was appointed and the restraints against creditors and claimants were continued.
Subsequent to these actions being taken the trustees received claims from other clients of Beckmann involving defalcations allegedly committed by him. The total of the claims filed with the Trustees as of this date is $20,343. The investigation of the trustees has not been completed and additional claims may be filed.
At the time the trustees filed their complaint a mortgage foreclosure action was pending in this court in which Beckmann was named a defendant by reason of a second mortgage he held on the subject real estate. This mortgage had been given on May 29, 1968 to secure an indebtedness owing to Beckmann in the amount of $15,000. Beckmann was also the assignee of a third mortgage, dated May 30, 1972, on the same property and for the same amount. The real estate was sold at sheriff's sale on July 25, 1975, resulting in a surplus of $22,755.44, and an order was entered on July 31, 1975 directing that the surplus funds be paid over to the custodial receiver.[1]
Notices of claims against Beckmann have been filed with the receiver aggregating $68,695.71, inclusive of the claims filed with the trustees by Beckmann's clients. These claims include personal unsecured obligations of Beckmann for bank overdrafts, attorney's fees, telephone bills, personal expenses, and alimony and support payments due his former wife pursuant to a judgment of divorce entered prior to the inception of these proceedings. The receiver has applied to the court for an order fixing the priority, if any, of the claims to be paid from the fund and for the payment of administration expenses.
*553 The principal claimants  the trustees and Beckmann's former spouse  assert the right to priority over each other as well as over all other claimants. The trustees, who will be subrogated to the rights of Beckmann's clients to the extent their claims are paid by the trustees (R. 1:28-3 (e)), urge they have absolute priority on the theory that Beckmann commingled trust funds with those of his own, and a constructive trust or equitable lien should therefore be imposed on all property of Beckmann, including any property acquired by him with the use of trust assets.
Mrs. Beckmann's claim is founded upon a judgment of divorce entered on February 18, 1975, under the terms of which she was awarded alimony and support at the rate of $180 a week plus certain additional benefits, including the payment of $2000 attorney's fee to her attorney. Additionally, her husband was ordered to assume responsibility for the payment of certain loans then outstanding for which she had cosigned. On October 3, 1975 an order was entered in this proceeding authorizing Mrs. Beckmann to obtain a judgment fixing the amount of arrearages due to her under the divorce judgment, and judgment was entered on that date in the amount of $19,614.67. The judgment represents the sum of unpaid support and alimony (of which $540 was unpaid as of May 30, 1975, the date the receiver was appointed), unpaid insurance premiums and attorney's fees, and an unsecured loan of Beckmann which Mrs. Beckmann paid as cosigner ($12,224.67).
Mrs. Beckmann claims absolute priority over all creditors on two theories: first, that she is a judgment creditor by virtue of her judgment of divorce entered on February 18, 1975, which fixed Beckmann's financial obligations to her, and second, that public policy favors the claim of a former spouse for support and alimony over those of his commercial creditors.
With the adoption of R. 1:28-8 the Supreme Court has authorized proceedings which are sui generis in the law *554 of this State. The rule authorizes the institution by the trustees of a general equity receivership action against attorneys to enable the court to marshall all of the assets of an attorney's estate for the protection of his clients, the Trustees and his creditors. While equity receiverships involving specific assets of an individual debtor have long been recognized, see Kuhl v. Martin, 28 N.J. Eq. 370 (Ch. 1877), the appointment of a receiver for the entire estate of an individual is a proceeding novel to this jurisdiction. Nevertheless, and apart from the Supreme Court's delegated powers to regulate the conduct and affairs of attorneys, it is generally acknowledged that special circumstances justify the use of a court's inherent equity powers to take custody of and preserve the assets of individuals, especially where claimants may otherwise be prejudiced by misconduct of a fiduciary. 4 Pomeroy's Equity Jurisprudence (5 ed. 1941), § 1334.
In the absence of any statutory or judicial precedent, the administration and distribution of an insolvent attorney's estate pursuant to R. 1:28-8 should proceed in accordance with the provisions of the federal bankruptcy laws, supplemented where appropriate by equitable principles reflecting the special circumstances giving rise to this type of proceeding.[2] Thus, the status of claims should be determined as of the time of the filing of the complaint or the appointment of a receiver, United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222 (1939); 11 U.S.C.A. § 103, and questions of priority in distribution, setoff, provability of claims and like matters should follow the equivalent provisions of the federal bankruptcy laws which *555 furnish a vast body of procedural and substantive law in the administration of individual insolvents' estates.
After payment of administration expenses of the receivership, the claims of secured creditors and those possessing valid legal and equitable liens upon the assets of the estate should be accorded priority in distribution over the claims of general creditors. The trustees here assert what is essentially an equitable lien on the assets of Beckmann by virtue of his alleged commingling of trust funds, and that lien would unquestionably be recognized by a bankruptcy court which, in essence, sits as a court of equity "to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." Pepper v. Litton, 308 U.S. 295, 307-308, 60 S.Ct. 238, 84 L.Ed. 281 (1939); cf. In re Van Winkle, 49 F. Supp. 711, 714 (W.D. Ky. 1943).
There can be no question but that under our law, a cestui que trust has an equitable lien not only on the specific trust property which has been misappropriated but its product as well. Stretch v. Watson, 5 N.J. 268, 279 (1950); In re Flasch, 51 N.J. Super. 1, 29 (App. Div. 1958). Professor Scott sets forth the principle as follows:
Where * * * the trustee by wrongfully disposing of trust property acquires other property, the beneficiary can follow the trust property into the product, and can enforce a constructive trust or equitable lien upon the product. With respect to the product of the trust property he is entitled to priority over other creditors of the trustee. 2 Scott on Trusts 1093 (1939).
The infirmity in the trustees' position here lies not with the principle but the facts. The fund in court as to which the trustees assert priority is simply not traceable to any moneys Beckmann may have embezzled from his clients. The fund here represents the proceeds of a mortgage received by Beckmann in 1968, at least three years prior to *556 any known or claimed embezzlement. Manifestly, this fund cannot be the product of Beckmann's alleged embezzlements, nor has any evidence been forthcoming to show that Beckmann used any of his clients' funds to maintain or further his interest in the property which was foreclosed. Accordingly, neither the trustees nor Beckmann's clients can claim an equitable lien on the fund in court, and they do not have any priority over the claims of Beckmann's general creditors. See Atherton v. Green, 179 F. 806 (7th Cir.1910); Kamberg v. Springfield Nat. Bank, 293 Mass. 24, 199 N.E. 339 (Sup. Jud. Ct. 1935). In Kamberg the Massachusetts Supreme Judicial Court stated:
If an insolvent has obtained money or property by fraud or other tort, that money or property is not properly part of the assets of his estate, and may be reclaimed. * * * Likewise, if the insolvent restores it before bankruptcy occurs, there is no preference, for there is no diminution of assets. * * *
But that principle applies only so long as the money or property can be traced and found, either in its original or in an altered form, in some particular assets. When that can no longer be done, the claim of the person who has been deprived of money or property by fraud or other tort * * * ranks no higher than the claims of ordinary creditors. [199 N.E. at 341].
As to the claims of Mrs. Beckmann, neither the divorce judgment nor the judgment fixing arrearages entitles her to any preferred position.[3] Under well-settled principles of bankruptcy law and practice, a claim for alimony and support is neither provable nor dischargeable in bankruptcy. *557 Wetmore v. Markoe, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904); Dunbar v. Dunbar, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1903); Audobon v. Shufeldt, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901); see 11 U.S.C.A. § 35(a) (7); 3A Collier on Bankruptcy (14 ed. 1975), § 63.13; 9 Am. Jur.2d, Bankruptcy, § 417. The rationale would appear to be that judicially decreed support is not a debt of the insolvent, but the enforcement of a general duty of a husband to support his former wife and his children, Wetmore v. Markoe, supra at 73-76, 25 S.Ct. 172, and public policy precludes the discharge of the husband from that obligation. Since it is not subject to discharge by an adjudication of bankruptcy, it is therefore not a provable debt, and neither the former wife nor minor children are entitled to participate in the bankrupt's estate along with his other creditors.
The bankruptcy rule has been subject to criticism, and at least one federal court has sanctioned distribution to an alimony claimant, at least with respect to arrearages due at the time the bankruptcy petition was filed. Heimberger v. Joseph, 55 F.2d 171 (6 Cir.1931). The author of the current edition of Collier applauds the result reached in Heimberger and urges that provability and allowance of alimony claims should be restricted to that part of the judgment in arrears, while claims in futuro should not be admitted to proof nor participation in the bankrupt's estate. See 3A Collier, op. cit., § 63.13. This reasoning and the result reached in Heimberger are particularly appropriate here. In the bankruptcy context the debtor is discharged of all debts due his general creditors, whereas his alimony and support obligations are not dischargeable. The wife's participation in a distribution of the bankrupt's estate would give her an advantage not accorded to other creditors, for she can proceed against her former husband after his adjudication and discharge to compel payment of alimony and support. Allison v. Allison, 150 Colo. 377, 372 P.2d 946 (Sup. Ct. 1962); Martin v. Martin, 123 Ga. App. 278, 180 S.E.2d *558 562 (Ct. App. 1971); In re Williams, 208 N.Y. 32, 101 N.E. 853 (Ct. App. 1913); Erickson v. Beardall, 20 Utah 2d 287, 437 P.2d 210 (Sup. Ct. 1968).
The proceedings instituted here, however, will not operate so as to discharge Beckmann from his obligations owing to any creditor, and they, as well as Mrs. Beckmann, can proceed directly against Beckmann now and in the future to collect their claims. It would hardly be equitable, therefore, to exclude Mrs. Beckmann from participating in the distribution of the fund in court on a par with Beckmann's general creditors simply because his obligations to her arose out of their marital relationship rather than a commercial or fiduciary transaction.
Mrs. Beckmann's claims will be recognized in this proceeding as fixed by the divorce judgment entered on February 18, 1976, to the date of the appointment of the custodial receiver on May 30, 1975, the cut-off date being in accordance with the bankruptcy practice and procedure for determining the existence and the amount of creditors' claims. See 11 U.S.C.A. § 103 (b); 3A Collier, op. cit., § 63.04. As of that date Mrs. Beckmann was owed arrearages of $540 for alimony and $2000 for support and counsel fees. In addition, Mrs. Beckmann will be allowed the amount of the judgment she paid to Peoples Trust of New Jersey ($12,224.67 plus interest) which the divorce judgment obligated Beckmann to pay. While her payment of this indebtedness occurred after May 30, 1975, she is entitled to be treated as the equitable subrogee of that judgment under the circumstances present here. Certainly Beckmann's other creditors will not be prejudiced thereby; if she had not paid the judgment, the judgment creditor would have been entitled to present its claim against Beckmann to the receiver and to participate in the distribution of the fund in court to the same extent as Mrs. Beckmann.
Accordingly, distribution of the fund in court will be made first in payment of administration expenses, and the *559 balance remaining thereafter will be distributed pro rata to all creditors whose claims have been established by competent proofs on or before August 2, 1976.
NOTES
[1] The receiver was unable to effect any recovery of moneys from Beckmann's law practice, and no other assets of Beckmann have been found. Hence, the only moneys available for distribution are those derived from the foreclosure sale.
[2] It may be noted that general equitable principles prevailing under state law are also recognized by the bankruptcy courts in the allowance and the disallowance of claims. See 3A Collier on Bankruptcy § 63.03(3); Hill, "The Erie Doctrine in Bankruptcy," 66 Harv. L. Rev. 1013 (1953); Seiden v. Southland Chenilles, Inc., 195 F.2d 899, 902 (5 Cir.1952).
[3] Mrs. Beckmann was granted leave to apply for the entry of a judgment fixing arrearages, not for the purpose of creating a lien, see Joseph Harris & Sons, Inc. v. Van Loan, 23 N.J. 466 (1957), but only because the court which entered the divorce judgment would have had the power to modify the terms of the judgment and in theory could have excused Beckmann from its obligations. Slep v. Slep, 43 N.J. Super. 538, 541 (Ch. Div. 1957).