165 N.J. Super. 352 (1979)
398 A.2d 152
IN THE MATTER OF HARRY KAMPELMAN, AN ATTORNEY OF THE STATE OF NEW JERSEY.
IN THE MATTER OF DOTTEL REALTY CO., INC., KAMPELMAN PROPERTIES, INC., A/K/A H. KAMPELMAN INDUSTRIES, INC., A/K/A KAMPELMAN PROPERTIES, K.E.K. REALTY CO., ROSKAM ASSOCIATES, INC., KAMAN PROPERTIES, INC., A/K/A KAMAN PROPERTIES, 347 FERRY ST., INC., SUNSHINE, INC., A/K/A SUNSHINE HOMES, KAMBRO REALTY, SOLKAM REALTY CO., INC., CORLAN CORPORATION, BAUKAM, INC., AND PASSAIC COUNTY CENTER, INC. TRUSTEES OF THE CLIENTS' SECURITY FUND OF THE BAR OF NEW JERSEY, PLAINTIFF,
v.
HARRY KAMPELMAN, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 22, 1979.
*353 Mr. Michael S. Meisel, custodial receiver of the estate of Harry Kampelman, pro se.
Ms. Colette A. Coolbaugh for plaintiff Trustees of the Clients' Security Fund of the Bar of New Jersey. (Messrs. Charles J. Hollenbeck and David E. Johnson on the brief).
Mr. Salvatore L. Borrelli attorney for Lakeview Savings and Loan Association.
Mr. Willis F. Flower for Chelsea Title Co. (Messrs. Kirkman, Mulligan, Bell & Armstrong, attorneys)
*354 Mr. Herman Osofsky for David and Gitla Helman.
Mr. Bennett Wasserstrum for Stephen Kerekes.
CIOLINO, J.S.C.
This matter involves three consolidated actions and presents the question: Is an advance of money by the Trustees of the Clients' Security Fund of the Bar of New Jersey (Fund) to a custodial receiver appointed pursuant to R. 1:28-8 to take possession of the property of an attorney an administrative expense of receivership and as such entitled to priority of distribution?
The pertinent facts are undisputed. On January 23, 1976 Harry Kampelman, through his attorney, filed a complaint requesting the appointment of a receiver for his law practice.
Pursuant to the complaint, on February 11, 1976 this court appointed Michael S. Meisel, Esq. custodial receiver of said practice, "with full authority to take charge of and manage the assets, trust accounts and bank accounts of said practice of law * * *."
Meanwhile, on February 3, 1976 a group of investors and former clients of Kampelman filed a complaint seeking the appointment of a receiver of the corporations of which Kampelman was alleged to be sole controlling shareholder, and with which Kampelman had placed investments. This court also appointed Meisel custodial receiver of these entities on March 1, 1976.
On February 7, 1977 the Trustees of the Fund filed a complaint resulting in the appointment of Meisel on March 7, 1977 as custodial receiver of the entire estate pursuant to R. 1:28-8. That order also consolidated the three separate actions in which Meisel was appointed receiver. Early in 1976 Meisel began corresponding with the Trustees of the Fund regarding, among other things, financial assistance from the Fund to facilitate an investigation into possible assets of Kampelman's estate. The Trustees agreed on April 20, 1977 to advance Meisel $10,000 to underwrite the costs of such an investigation. This financial assistance enabled Meisel to *355 compel accountings, conduct real estate and corporate searches, hold receiver's hearings and engage in litigation to recover assets, all for the benefit of Kampelman's clients and other creditors.
Subsequently, at the Trustees' request Meisel petitioned the court for authority to refund all or part of the $10,000 advanced by the Fund for the investigation. An order to show cause to approve the receiver's final report and accounting was made returnable on January 2, 1979, and the Fund filed a motion, also returnable on January 2, 1979, for an order directing reimbursement by the receiver. The Fund alleges that the $10,000 advance represents an administrative expense of the receivership and as such enjoys a priority over other claims. I agree with the Fund's position.
Significant to reaching this determination is Trustees of the Clients' Secur. Fund, etc. v. Beckmann, 143 N.J. Super. 548 (Ch. Div. 1976). After recognizing the unique nature of proceedings pursuant to R. 1:28-8, the court there stated:
In the absence of any statutory or judicial precedent, the administration and distribution of an insolvent attorney's estate pursuant to R. 1:28-8 should proceed in accordance with the provisions of the federal bankruptcy laws, supplemented where appropriate by equitable principles reflecting the special circumstances giving rise to this type of proceeding. Thus, the status of claims should be determined as of the time of the filing of the complaint or the appointment of a receiver, United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222 (1939); 11 U.S.C.A. § 103, and questions of priority in distribution, setoff, provability of claims and like matters should follow the equivalent provisions of the federal bankruptcy laws which furnish a vast body of procedural and substantive law in the administration of individual insolvents' estates. [at 554-555]
Referring, then, to the Federal Bankruptcy Act, I find § 64(a) (1) is on point:
(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; the *356 fees for the referees' salary and expense fund; the filing fees paid by creditors in involuntary cases or by persons other than the bankrupts in voluntary cases; where property of the bankrupt transferred or concealed by him either before or after the filing of the petition, is recovered for the benefit of the estate of the bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of such recovery * * *. [11 U.S.C. § 104(a) (1) (Supp. 1973)]
Judicial interpretation of § 64(a) (1) indicates that administrative expenses come first in the distribution of proceeds derived from property under the jurisdiction of the bankruptcy court. See Division of Labor Law Enforc., Cal. v. Goggin, 165 F.2d 155, 157 (9 Cir.1947); rev'd on other grounds, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543 (1949). The same is generally true in connection with insolvency proceedings pursuant to state law. See, generally, N.J.S.A. 14A:14-21(1) (Supp. 1978); 20 N.J. Practice (Ackerson-Fulop-Lodge, Skills and Methods), (2d 1973), § 1503 & 1504 at 371-374.
What constitutes "costs and expenses of administration" is largely a matter within the discretion of the trial court in light of the attendant facts in each case. Nisonoff v. Irving Trust Co., 68 F.2d 32, 34 (2 Cir.1933); Lerner Stores Corp. v. Electric Maid Bake Shops, 24 F.2d 780, 782 (5 Cir.1928). Nevertheless, the provisions of § 64(a) (1) relative to costs and expenses are to be strictly construed in aid of economy in administration. See In re American Anthracite & Bit. Coal Corp., 171 F. Supp. 377 (S.D.N.Y. 1959), aff'd sub nom. American Anthracite & Bit. Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119 (2 Cir.1960). For purposes of priorities under § 64(a) (1), cost and expenses of administration must generally relate to the preservation or development of the bankrupt estate. In re Freedomland, Inc., 480 F.2d 184, 189 (2 Cir.1973), aff'd sub nom. Otte v. United States, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974).
That the $10,000 advanced by the Fund to Meisel constitutes an administrative expense is clear. The advance *357 from the Fund enabled Meisel to initiate an investigation leading to the discovery of assets which were part of Kampelman's estate. The monies also facilitated the receiver's preservation of these discovered assets through appropriate litigation. The money advanced has served to assist Meisel in fulfilling the purpose of R. 1:28-8, that is, enabling "the court to marshall all of the assets of an attorney's estate for the protection of his clients, the Trustees and his creditors." Beckmann, 143 N.J. Super. at 554.
The $10,000 is a "cost and expense" of administering Kampelman's estate. Consequently, based on the principles underlying § 64(a) (1) of the Federal Bankruptcy Act and the insolvency law of this State, I find that the Fund has a priority as to the $10,000 advanced to the receiver.
Accordingly, the receiver is directed to reimburse the sum of $10,000 to the Fund as a cost and expense of administration and entitled as such to priority of distribution.