**FEDERAL LAND BANK OF JACKSON in Receivership, Plaintiff,**

v.

**FEDERAL INTERMEDIATE CREDIT BANK OF JACKSON and National Bank for Cooperatives, Defendants.**

Civ. A. No. J89–0192(L).

United States District Court, S.D. Mississippi, Jackson Division.

Nov. 6, 1989.

John C. Henegan, Anne V. Winter, Jackson, Miss., for plaintiff.

Keith R. Raulson, Sam E. Scott, Jackson, Miss., for Federal Intermediate Credit Bank of Jackson.

Lawrence A. Allison, Jr., Cheri D. Green, Jackson, Miss., for Nat. Bank for Cooperatives.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on objection by the plaintiff, Federal Land Bank of Jackson in Receivership (FLBJR), to a July 20, 1989 memorandum opinion and order of the United States Magistrate. 127 F.R.D. 473. Having considered the memoranda of authorities submitted by the parties, the court concludes that the magistrate's opinion should be affirmed in part and reversed in part as set forth below.

In May 1988, the Federal Land Bank of Jackson (FLBJ) was placed in receivership, and thereafter, the receiver filed this declaratory judgment action seeking a determination as to the validity of a collateral sharing agreement entered into between FLBJ and the defendants, Federal Intermediate Credit Bank of Jackson (FICBJ) and National Bank for Cooperatives (NBC).[1]

1. The present National Bank for Cooperatives was the former Jackson Bank for Cooperatives.

The receiver also sought to have declared invalid certain instruments by which FICBJ and NBC were granted security interests in certain FLBJR properties. Prior to the appointment of the receiver, these three entities had operated under joint management, which included common officers and directors, shared in-house legal counsel and on some occasions, joint representation of the entities by the law firm Brunini, Grantham, Grower and Hewes ("the Brunini firm" or "the firm"). That is, the Brunini firm had performed legal work at one time or another for each of the institutions and had on occasion jointly represented them. At the time the receiver was appointed, FLBJ owed Brunini approximately $45,000 in attorney's fees for its representation of that entity.

During the course of this litigation, FLBJR requested that the Brunini firm turn over to its former client, FLBJR, the client's files which remained in the possession of the firm. The Brunini firm declined and asserted that it had an attorney's retaining lien against those files as security for payment of the outstanding attorney's fees. Upon the firm's refusal to relinquish the files to FLBJR, FLBJR served upon the firm a subpoena duces tecum requesting all documents in the firm's possession which relate to any and all matters in which the Brunini firm jointly represented FLBJ and FICBJ. The Brunini firm responded by moving to quash the subpoena, and the magistrate, after receiving briefs and hearing oral argument, issued his opinion which addressed the various contentions raised by the subpoena and the motion, including the primary issue of the validity and enforceability of Brunini's attorney's lien. The magistrate ruled that the lien is valid and enforceable and that in order for FLBJR to obtain possession of the files in the Brunini firm's possession, it must pay the attorney's fees due or alternatively post bond in an amount sufficient to cover those fees. More particularly, the magistrate concluded that the lien is valid and found that FLBJR is financially and legally able to pay the claim for attorney's fees and is thus not entitled to obtain the files at issue unless payment, or adequate assurance of payment, is made. In so holding, the magistrate stated as follows:

> It is recognized that a lawyer should forego his right to enforce a retaining lien when the former client lacks the means to pay the lawyer's fee and has an urgent need for the papers to defend a criminal prosecution or to assert or defend a similarly important personal liberty. See, e.g., Pomerantz v. Schandler, 704 F.2d 681 (2d Cir.1983); Lucky–Goldstar Int'l v. International Mfg. Sales Co., 636 F.Supp. 1059 (N.D.Ill. 1986). However, this principle has no applicability to the lien asserted by the Brunini firm in this case, because the FLBJ is financially able to pay the fees and cash advances claimed by the firm. Further, this action does not involve a criminal charge or an important personal liberty such as that contemplated by this principle.

127 F.R.D. at 477.

Initially, the court observes that the magistrate was obviously correct in holding that Brunini's retaining lien is valid under Mississippi law. In the court's opinion, however, his conclusion that the lien is enforceable is in error. Contrary to the magistrate's finding, it appears that FLBJ, the former client, is not legally in a position to pay and hence cannot be said to be financially able to pay the fees. Accordingly, the magistrate's determination that the Brunini firm's lien is enforceable, premised primarily on his conclusion that the receiver is able to pay the attorney's fees, cannot stand.

Because the bank has been placed in receivership, the payment of creditors is now governed by federal regulation, 12 C.F.R. § 611.1174, Banks and Banking. That provision sets forth the priority by which creditors are to be paid:

(1) All costs, expenses and debts that were incurred by the receiver in connection with the administration of the receivership;

(2) All claims for taxes;

(3) All claims of creditors which are secured by specific assets of the bank, with priority of conflicting claims of creditors within the same class to be determined in accordance with priorities of applicable federal or state law;

(4) Claims of holders of bonds issued by the bank in receivership, individually, to the extent they are collateralized;

(5) Claims of holders of consolidated or systemwide bonds, and claims of other institutions of the farm credit system arising from their payments of those obligations made in accordance with applicable federal law; and

(6) All claims of general creditors.

In the case at bar, it is generally agreed that each of the claims of creditors within the first three categories will be paid. The size of the fund that will be left to satisfy the remaining creditors is not clear, but it is certain that creditors who fall within the sixth category will receive no payment on their claims. In his opinion, the magistrate found that the Brunini firm's retaining lien falls within the third category of priorities and that therefore the funds are sufficient to pay those fees. That is, the court concluded that the firm is a secured creditor since "[t]he purpose of the retaining lien, like that of any other lien, is to secure payment of an indebtedness." While that is true as a general proposition, the third category of priorities is limited to claims of creditors which are "secured by specific assets of the bank." In the court's opinion, the files at issue here may not appropriately be considered "specific assets" of the bank.

The Brunini firm's retaining lien is a possessory lien, giving the firm the right to retain the disputed files until the debt is paid. Hence, in a sense, payment of the debt is "secured" by Brunini's retention of the files. However, the lien is not judicially enforceable and does not attach to property having any market value. As plaintiff correctly asserts, the only value of the attorney's retaining lien is that it gives the attorney leverage in dealing with the client; the attorney is not "secure" as to the payment of his fee because the lien does not attach to property of any specific market value and hence the debtor at all times remains his only source of recovery.

Though there are no cases cited by either party addressing the proper interpretation of section 611.1174(d)(3), the bankruptcy code provides the closest analogy. Under the code, it is stated that

[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ...

11 U.S.C. § 506(a). Thus, to be a secured creditor for bankruptcy purposes, the creditor must have an interest in property of sufficient value to at least collateralize its claim in whole or in part. *See In re Ray*, 48 B.R. 534, 536 (Bankr.S.D. Ohio 1985). That is not the case here.

The Brunini firm urges that its retaining lien is a lien in the "specific" papers and other property of the client in its possession. That argument simply does not answer the question posed: Whether those papers and other property can be considered "assets" of the bank. The term "assets" as defined in Black's Law Dictionary signifies "everything which can be made available for the payment of debts...." The files here cannot be used to pay the debts of the bank even though they may indeed be of value to both the bank and the Brunini firm. Indeed, the firm's own brief makes the point that the files do not satisfy the definition of assets:

Such a lien is a valuable right notwithstanding the fact that some of the papers and documents which the lien is asserted

against have no intrinsic value, the lien being valuable in proportion to the inconvenience to the client caused by the denial of access to the papers and documents. 7A C.J.S., *Attorney and Client*, § 358, pp. 711–12.

Because the files to which the attorney's lien attached are not "specific assets" of the bank, the Brunini firm's claim does not come within the third category of priorities. It seems to be generally agreed that if the claim is not in the third category, it is within the sixth category. And, as previously stated, creditors within the sixth category will not be paid, as the funds for payment of creditors are not sufficient to satisfy all claimants.

■■■ Since the court concludes that the receiver, because of the priorities established for payment of claimants and because of the insufficiency of funds, is not able to pay the claim of the Brunini firm, a question arises concerning the enforceability of the Brunini firm's retaining lien. As recognized in Mississippi Ethical Opinion No. 144, a retaining lien should not be set aside in the absence of fraud or gross imposition by the client. In *Lucky–Goldstar*, one of the cases specifically relied on by the magistrate, the court stated that

> [f]inancial inability of the client to pay the amount owing should also cause the lawyer to forego the lien because *failure to pay the fee is not deliberate and thus does not constitute fraud or gross imposition by the client.*

*Lucky–Goldstar*, 636 F.Supp. at 1064 (emphasis supplied). That is in contrast to a situation where "the client is financially able but deliberately refuses to pay a fee that was clearly agreed upon and is due since in that instance, the conduct would constitute gross imposition by the client," and the assertion of the lien would therefore be ethically justified. *Id.* Thus, an attorney should not be permitted to deny his former client access to papers and documents where the client is unable to pay the debt.

The client must, of course, have a need for the papers and documents contained in the files, but where the prospect for payment of the attorney's fees is, as here, nonexistent or at least virtually so, a lesser showing of need should suffice than that cited by the magistrate. That is, it should not be necessary that the client have "an urgent need for the papers to defend a criminal prosecution or to assert or defend a similarly important personal liberty." 127 F.R.D. at 477. Given the circumstances of the present case, the court is satisfied that FLBJR has made a sufficient showing of its need for certain files concerning matters in which the Brunini firm jointly represented FICBJ and FLBJ, particularly files concerning (1) sale of minerals from FLBJ to FICBJ; (2) proposed reorganization and merger; (3) purchase of land for the Farm Credit Bank's building in Madison County; (4) dispute over the air conditioning system installed in the Farm Credit Bank's building; and (5) the sublease of a portion of the Farm Credit Bank's building to MCCA. Accordingly, the court is of the opinion that all such papers as are contained in those files which are the property of the client should be made available for inspection and copying by the FLBJR or its attorneys.

■■■ Brunini argues that absent a statutory provision which invalidates its lien, or which empowers the receiver or the FLBJR to avoid the lien, the firm's lien remains valid and enforceable. The court agrees with the conclusion of the magistrate that the federal laws under which the receiver was appointed and under which the receivership is being administered do not invalidate any lien created under state law, and that the receiver is not vested with the power to avoid any lien recognized under state law. Indeed, the court concurs in the magistrate's determination that the retaining lien of the Brunini firm was not invalidated by the appointment of the receiver. However, by establishing priorities for payment of creditors of the bank in receivership, the regulation does not invalidate the lien. Rather, because the firm's lien does

not fall within any of the specific categories of priority, the firm, as a creditor, falls within the sixth category, that of a general creditor. In other words, the regulation in question does not affect the validity of the lien but rather simply the priority to be accorded the claim in relation to the claims of other creditors. Enforceability of the lien is affected by the regulation, but only because the receivership funds are only sufficient to pay creditors whose claims are entitled to priority over the claim of the firm. In his opinion, the magistrate observed that "[u]nless other considerations compel the firm to relinquish its lien, it is entitled to retain possession of its files unless and until its lien is satisfied." 127 F.R.D. at 477. Here, other considerations, and in particular the inability of the client to pay, coupled with the client's need for certain of the files, operate to compel the firm to relinquish its lien. Accordingly, the Brunini firm's argument in this regard is not well taken.

In addition to his conclusions regarding the validity and enforceability of the retaining lien, the magistrate addressed a number of other issues relating to ownership of documents contained within the files. The court finds that those findings and conclusions should be affirmed.

In sum, the court concludes that the Brunini firm's attorney's lien, while valid, is unenforceable as it pertains to those files heretofore specifically described, and the magistrate's opinion is reversed to the extent it holds otherwise. The remaining conclusions of the magistrate are affirmed.