**In the Matter of the Liquidation of FIRST CITY NATIONAL BANK AND TRUST COMPANY.**

**No. M 8–85 (CSH).**

United States District Court, S.D. New York.

March 26, 1991.

Windels, Marx, Davies & Ives (Anthony A. Dean, of counsel), New York City, for Federal Deposit Ins. Corp.

Ross & Hardies (Peter I. Livingston, of counsel), New York City.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case requires the Court to consider the impact of the administrative claims procedures contained in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d), upon the retaining and charging liens of attorneys who rendered services to an insolvent national banking association.

*Background*

On December 20, 1989 the United States Comptroller of the currency declared the First City National Bank and Trust Company (the "Bank"), a national banking association, to be insolvent. The Comptroller appointed the Federal Deposit Insurance Corporation ("FDIC") receiver of the Bank.

The Bank had been represented in various legal matters by the firm of Ross & Hardies (the "Firm").

On February 7, 1990 the FDIC made written demand on the Firm for files in two litigated matters in which the Firm had represented the Bank prior to its insolvency. The FDIC also called upon the Firm to prepare necessary substitution of counsel forms for those matters. The Firm failed to comply with those demands.

On March 29, 1990 the Firm filed a claim as an unsecured creditor in the amount of $92,358 with the FDIC as receiver of the Bank. The FDIC allowed that claim, and has paid a dividend of 31% to the Firm.

On April 25, 1990 the FDIC made written demand on the Firm for the files relating to eight additional litigated matters in which the Firm had represented the Bank, and asked that the Firm prepare substitution of counsel forms for those matters as well. A spokesperson for the Firm, Peter Livingston, Esq., advised in a telephone discussion with a staff attorney for the FDIC that the Firm would not comply with the agency's request and claimed an attorney's lien on the files.

The FDIC could not persuade the Firm to retreat from that position in subsequent conversations and mailings. The FDIC therefore brought a motion before Part I of this Court for an order directing the Firm to turn over to the FDIC all files in its possession relating to the ten litigated matters; to deliver to the FDIC executed substitutions of counsel in those cases; and to refrain from taking any action on behalf of the Bank or FDIC without specific written authorization from FDIC.

The Firm responded to the FDIC's motion by collecting judgments from three of the Bank's debtors against whom the Firm

had commenced suit; instructing the debtors to make their checks payable to the Firm; and applying *ex parte* to the Court for an order permitting it to deposit those funds, totalling $256,733.78, into the registry, and to declare that the Firm is entitled to immediate payment of $63,727.25 from the fund thus created. The Firm styles its action as a motion for interpleader under Rule 22, Fed.R.Civ.P. The immediate payment sought in the amount of $63,727.25 represents the difference between the amount previously paid to the Firm by the FDIC in response to the Firm's administrative claim, and the total amount of the Firm's claim for attorneys' fees as stated in that claim.

The FDIC opposes the firm's motion for interpleader relief, and presses its own original motion. Both motions have been briefed and argued. This Opinion resolves them both.

### Discussion

Congress enacted FIRREA, effective as of August 9, 1989, to supplement earlier federal statutes regulating banks, and to provide a detailed regulatory framework to deal with the major difficulties confronting the thrift and banking industries. *See Circle Industries v. City Federal Savings Bank,* 749 F.Supp. 447, 451 (E.D.N.Y.1990).

Under the statutory scheme, the FDIC becomes the receiver of a failed bank. The power of the Comptroller of the Currency to appoint receivers derives from the Act of May 15, 1916, 12 U.S.C. § 192. The FDIC, created by the Act of September 21, 1950, 12 U.S.C. § 1811 *et seq.*, acts as receiver pursuant to § 1821(c). FIRREA's more recent contributions to the statutory scheme are twofold. First, it establishes administrative procedures for adjudicating claims in the first instance asserted against the FDIC as receiver of a failed bank. *See* 12 U.S.C. § 1821(d)(5)–(14). Second, FIRREA contains provisions specifically delineating the scope and form of judicial review of the agency's disallowance of claims asserted against it in its capacity as receiver. § 1821(d)(6), (13)(D).

FIRREA gives the FDIC authority to determine claims against failed banks, ¶ 1821(d)(3)(A), in accordance with the requirements of the statute and regulations promulgated by the agency under rulemaking authority conferred by § 1821(d)(4). § 1821(d)(5)(A)(i) provides:

Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

FIRREA's provisions for judicial review appear in subsections 1821(d)(6) and (13)(D). Subsection 1821(d)(6) provides in pertinent part:

**Provision for agency review or judicial determination of claims**

(A) **In general**

Before the end of the 60–day period beginning on the earlier of

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

Subsection 1821(d)(13)(D) provides:

**Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets

of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

It is also pertinent in the context of the present case to note the following provision in § 1821(d)(8):

The Corporation shall establish a procedure for expedited relief outside of the routine claims process established under paragraph (5) for claimants who—

(i) allege the existence of legally valid and enforceable or perfected security interests in assets of any depository institution for which the Corporation has been appointed receiver; and

(ii) allege that irreparable injury will occur if the routine claims procedure is followed.

The legislative history of FIRREA makes it plain that Congress enacted this scheme of administrative claims resolution and limited judicial review to achieve prompt resolution of claims consistent with constitutional due process. Thus the Report of the House Banking, Finance and Urban Affairs Committee recommending passage of FIRREA, quoted in *Circle Industries, supra,* at 453, states in part:

After exhaustion of streamlined administrative procedures, a claimant has a choice to either bring the claim de novo in the District Court in which the insured institution had its principal place of business or have the claim determination reviewed by one or more administrative processes....

This construct of administrative resolution and de novo judicial determination is responsive to the constitutional and statutory concerns with the FSLIC's current claims adjudication process as outlined by the Supreme Court in *Coit Independence Joint Venture v. FSLIC* (March 21, 1989).

The House Committee's reference is to *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corpo-*

*ration,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). In *Coit* the Court held that under the statutes then existing the FSLIC did not have adjudicatory powers over creditors' claims against insolvent banks and loan associations under FSLIC receivership; that the courts were consequently not divested of jurisdiction to consider such claims de novo; and that, in light of the failure of the administrative claims procedure to place a reasonable time limit on the agency's consideration of creditors' claims, creditors were not required to exhaust such procedure before bringing suit in court. However, as the House Committee noted in its discussion of *Coit:*

Justice O'Connor in that opinion noted, however, that exhaustion could be required if an administrative procedure with clear time limits were established. The Committee believes it has provided a clear set of guidelines for claimants and for the FDIC with reasonable and specific time limits.

In the light of this statutory scheme, I consider the claims asserted by the Firm and the proper method of their resolution.

■ The FDIC, in its capacity as receiver, discharged the Firm as attorneys for the Bank. Under New York law, a client has the absolute right to change attorneys. If the attorney is discharged without any misconduct on his or her part, or voluntarily withdraws for just cause, the attorney may invoke two types of liens. The common law gives a general possessory retaining lien allowing an attorney to keep a client's papers or assets until the legal fee is paid. In addition, there is the charging or special lien, originally also a common law right but then statutorily established, against monies recovered for a client by the attorney's efforts in litigation. *See* New York Judiciary Law § 475; *Levitas v. Levitas,* 96 Misc.2d 929, 410 N.Y.S.2d 41, 43 (Sup.Ct.1978).

In the case at bar, the Firm asserts both a retaining lien and a charging lien. Under the common law, the retaining lien attaches from the inception of the case. The statutory charging lien, whose existence is recognized "[f]rom the commencement of an

action, ... attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come ..." New York Judiciary Law § 475. In the case at bar, the Firm asserts its charging lien against the proceeds of the three judgments on behalf of the Bank it has collected. The Firm's brief says at 2 that it "has recently come into possession" of the proceeds of those judgments. In point of fact, that possession came about as the result of the Firm's continued litigation activity after the FDIC had discharged the Firm and the Firm had filed its administrative claim with the FDIC.

■ It is important to note at the outset the all-inclusive nature of the FDIC's powers as receiver. 12 U.S.C. § 1821(d)(2) provides:

**(A) Successor to institution**

The Corporation shall, as conservator or receiver, and by operation of law, succeed to—

(i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

(ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution

**(B) Operate the institution**

The Corporation may, as conservator or receiver—

(i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

(ii) collect all obligations and money due the institution;

(iii) perform all functions of the institution in the name of the institution which is consistent with the appointment as conservator or receiver; and

(iv) preserve and conserve the assets and property of such institution.

By way of contrast, a New York statutory charging lien does not transform the proceeds of litigation into the attorney's property; only a judgment in the attorney's favor has that effect. *See McCarthy v. Philippine National Bank,* 690 F.Supp. 1323, 1330 (S.D.N.Y.1988); *Morgan v. Onassis,* 5 N.Y.2d 732, 177 N.Y.S.2d 714, 152 N.E.2d 670 (1958).

■ Notwithstanding that latter principle, the Firm contends that granting the FDIC's motion would bring about an unconstitutional deprivation of Firm property without due process of law. The Firm stresses that the common law retaining lien is possessory in nature. There is no substance to the Firm's constitutional argument. In due process cases, the inquiry always is whether the individual in question "received all the process that was due him." *Baden v. Koch,* 799 F.2d 825, 831 (2d Cir.1986). As Judge Friendly stated in his oft-quoted article:

"The required degree of procedural safeguards varies directly with the importance of the private interest affected and the need for and usefulness of the particular safeguard in the given circumstances and inversely with the burden and any other adverse consequence of affording it." H. Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267, 1278 (1975) (footnote omitted).

*See also Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

More precisely, our prior discussions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In the case at bar, the public's interest in the prompt and efficient resolution of

claims against failed banks is manifest. Permitting attorneys to enforce retaining or charging liens in the courts in derogation of FIRREA's administrative procedures would work considerable prejudice to that public interest. There is no countervailing prejudice to attorneys. They may urge their lien theories upon the FDIC, even requesting expedited relief under § 1821(d)(8) if the circumstances warrant, and obtain de novo judicial review of their lien claims if the agency rejects them. All the statutory scheme requires is the exhaustion of the administrative procedures before suit may be filed in the district courts. Congress insured that result in § 1821(d)(13)(D) by barring courts from exercising original jurisdiction.

I conclude that Congress complied with due process requirements in fashioning its statutory and regulatory scheme. It is of no matter that the Firm's services antedated, in part at least, the enactment of FIRREA. Congress had the power to require creditors to submit pre-existing claims to administrative procedures, so long as those procedures did not offend due process; and these do not. It necessarily follows that this Court lacks subject matter jurisdiction to grant the relief which the Firm requests.[1] While no prior reported case addresses attorney's liens under New York law, decisions in other federal district courts, collected in the FDIC's briefs, uniformly support the conclusion I reach at bar.

For the foregoing reasons, the FDIC's motion is granted and that of the Firm is denied.

Counsel for the FDIC are directed to settle an Order and Judgment consistent with this Opinion on five (5) days' notice.

It is SO ORDERED.

---

1. The Firm's reliance upon bankruptcy cases enforcing the statutory charging lien is misplaced. Bankruptcy principles are not transferrable to the quite different context of bank receivership. *See Corbin v. Federal Reserve Bank of New York*, 629 F.2d 233, 236 (2d Cir. 1980) ("Because the powers and goals of a bank receiver are quite different, equitable principles developed in the reorganization context cannot simply be grafted onto the national banking statutes.")