FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for Mountain
Ridge State Bank, In Receivership,

v.

SHAIN, SCHAFFER & RAFANELLO,
Appellant.

No. 91–5059.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Aug. 12, 1991.

Decided Sept. 4, 1991.

Roger J. Foss, Cassidy, Foss & San Filippo, Red Bank, N.J., for appellee.

Jeffrey A. Donner, Shain, Schaffer & Rafanello, Parsippany, N.J., for appellant.

Before COWEN and NYGAARD, Circuit Judges, and POLLAK, District Judge[*].

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal raises the question whether a law firm, Shain, Schaffer & Rafanello ("SS & R"), may, in lieu of pursuing the claims procedure established by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") at 12 U.S.C. § 1821(d), assert a retaining lien against the legal files of its former client. The client, Mountain Ridge State Bank ("MRSB"), was a federally-insured bank chartered under New Jersey law. On October 5, 1990, the Federal Deposit Insurance Corporation (the "FDIC") became receiver of MRSB, at which time MRSB owed SS & R over $76,000 in unpaid legal fees and disbursements. After the FDIC took over MRSB, it discharged SS & R and requested that SS & R forward all legal files to new counsel. SS & R refused, insisting that it would only turn over the files when it was paid the outstanding fees and disbursements.

The FDIC brought suit in the United States District Court for the District of New Jersey to compel SS & R to turn over the files. The district court ordered SS & R to turn them over because it concluded that the only remedy that a party with a claim to a failed bank's assets had was to file a claim under the FIRREA procedure. This court declined to stay the district court's order pending appeal; accordingly, SS & R has now turned over its MRSB files to FDIC.

SS & R appeals the district court's order on the grounds that it had a valid state law retaining lien which should have entitled it to immediate payment in full before relinquishing the files. Recognizing that return of the files at this late stage would be futile, SS & R seeks preferred administrative status for its claim for fees. Because we conclude that we lack the power to grant SS & R the relief it seeks and that even a valid state law lien cannot be used to circumvent the claims procedure established under FIRREA, we will affirm.

## I.

For many years, SS & R was the general and litigation counsel for MRSB. On October 5, 1990, the New Jersey Commissioner of Banking (the "Commissioner") seized the business and property of MRSB, finding that it was in an unsafe and unsound condition, pursuant to N.J.Stat.Ann. § 17:9A–269. On that same date, the Commissioner offered the FDIC the position of receiver. The FDIC accepted that offer and was appointed receiver under N.J.Stat. Ann. § 17:9A–272(D) and 12 U.S.C. § 1821(c)(3)(A).

One of the FDIC's first acts as receiver was to terminate SS & R's representation of MRSB on all matters. The FDIC requested that SS & R turn over all files involving MRSB as plaintiff or defendant to successor counsel. SS & R refused and asserted a retaining lien over the files because MRSB owed it over $76,000. SS & R stated that it would only turn over the files when it was paid the attorneys fees and disbursements that MRSB owed it as of October 5, 1990.

On October 23, 1990, lawyers from SS & R and the FDIC met to discuss the problem. In the course of that meeting, SS & R was informed of the administrative claims procedure under FIRREA. Although SS & R filed a claim with the FDIC pursuant to the FIRREA procedure shortly after that meeting, SS & R continued to refuse to

[*] Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

relinquish the files.[1] On November 8, 1990, the FDIC acknowledged receipt of SS & R's FIRREA claim and made a written demand for the files.

When SS & R persisted in its refusal, the FDIC filed this action on January 17, 1991 seeking an order requiring SS & R to turn over the files. On January 18, 1991, the district court granted that relief and ordered SS & R to surrender them on or before January 25, 1991. On January 25th, SS & R moved for reconsideration of the January 18th order and sought to vacate the earlier order or to condition any turn-over on the FDIC's payment, irrevocable commitment to pay, or arrangement to se-cure payment of the outstanding fees. SS & R's motion was denied, but the district court temporarily stayed its order. On January 28th, SS & R filed this appeal and sought a stay of the January 18th order. When we denied the motion to stay on January 29th, SS & R turned over the files.

In this appeal, SS & R seeks preferred administrative status for its claim for fees. We have jurisdiction to review the January 18th order under 28 U.S.C. § 1292(a)(1). Under 12 U.S.C. § 1821(d)(13)(D), we have no jurisdiction to resolve SS & R's claim for fees.

## II.

### A.

It is not disputed that SS & R has a valid retaining lien in MRSB's files under New Jersey law. *See Brauer v. Hotel Assocs., Inc.*, 40 N.J. 415, 192 A.2d 831 (1963). In *Brauer*, the New Jersey Su-preme Court recognized that:

> The common law retaining lien attaches to all papers, books, documents, securi-ties, moneys, and property of the client which comes into the possession of the attorney in the course of, and with refer-ence to, his professional employment. It

is a general lien which gives an attorney the right to retain possession of his client's property until the entire balance due him for legal services, as well as for costs and disbursements, is paid.

*Brauer*, 40 N.J. at 419, 192 A.2d 831. Since the files in question contain attorney work product, and they came into SS & R's possession in the course of SS & R's repre-sentation of MRSB, it is clear that under New Jersey common law, SS & R has a valid retaining lien over the files.

The FDIC claims, however, that even a valid retaining lien under state law does not entitle SS & R to avoid the statutory claims procedure established by Congress at 12 U.S.C. § 1821(d). SS & R, on the other hand, assumes that a valid state law lien is all it needs for a summary determi-nation in its favor. SS & R explains that its claim for fees is not covered by the FIRREA claims procedure because it is an administrative expense of managing an es-tate in receivership. SS & R therefore reasons that it is entitled to immediate pay-ment for the services it rendered. In addi-tion, SS & R complains that the district court deprived it of due process when it ordered SS & R to turn over the files without securing payment of the outstand-ing amounts.

### B.

The recent savings and loan crisis prompted Congress to enact broad revi-sions in federal banking law to enhance certain powers of the FDIC and to elimi-nate impediments to the efficient resolution of failed financial institutions. To that end, Congress passed FIRREA in 1989. FIRREA eliminated several obstacles to the efficient administration of failed finan-cial institutions. *See* 12 U.S.C. § 1825(b) (no involuntary liens against the property of the receiver); 12 U.S.C. § 1821(d)(12) (mandatory 90–day stay of pending litiga-

---

1. SS & R filed a Proof of Claim with the FDIC on October 25, 1990. Under FIRREA, the FDIC had 180 days to approve or reject SS & R's claim. To the best of our knowledge, the FDIC has not yet done anything. SS & R has indi-cated that it will file an appeal concerning the FDIC's inaction in district court in accordance

with 12 U.S.C. § 1821(d)(6). If SS & R's appeal to the district court is timely, that court will have jurisdiction to reach the merits of SS & R's claim for fees and will have *de novo* review over SS & R's claim. *See Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391 (3d Cir.1991).

tion); 12 U.S.C. §§ 1829 and 1822 (no bonds required of the FDIC).

Under FIRREA, the FDIC is authorized to act as receiver of failed state banking institutions. 12 U.S.C. § 1821(c)(3). In its capacity as receiver, the FDIC may resolve claims against the failed institution. *Id.* While the receiver may prescribe regulations regarding the allowance or disallowance of claims by the receiver, the receiver must follow the statutorily prescribed procedures for the determination of claims. 12 U.S.C. § 1821(d)(4) and (5).

Section 1821(d) mandates that all claims against the receiver's assets be promptly identified, quantified and substantiated. *See* 12 U.S.C. § 1821(d). A claimant begins by filing its claim with the receiver under 12 U.S.C. § 1821(d)(5)(D). Alternatively, a claimant may seek a determination of its claim outside the routine claims process, if the claimant alleges either (i) a legally valid and enforceable or perfected security interest in assets of the failed institution or (ii) that irreparable injury will occur if the routine claims procedure is followed. 12 U.S.C. § 1821(d)(8).

Within 60 days after the 180–day period following the claim's submission, or within 60 days of the date of any notice of disallowance, a claimant may seek administrative or judicial review of the FDIC's disallowance or inaction in a district court or territorial court of the United States for the district within which the depository institution's principal place of business is located, or in the United States District Court for the District of Columbia. *See* 12 U.S.C. § 1821(d)(6). Alternatively, a claimant may seek an administrative review of the FDIC's determination, which administrative review is in turn subject to judicial review. *See* 12 U.S.C. § 1821(d)(7).

■ FIRREA's claims procedure in section 1821(d) is exclusive. Congress ex-

pressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821. *See* 12 U.S.C. §§ 1821(d)(6) and 1821(d)(13)(D).[2] *See also Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391 (3d Cir.1991); *Resolution Trust Corp. v. Elman*, 761 F.Supp. 245 (S.D.N.Y.1991); *Re First City Nat'l Bank & Trust Co.*, 759 F.Supp. 1048, 1050 (S.D.N.Y.1991). Recently, we observed that the jurisdictional bar of section 1821(d)(13)(D) reaches "(1) claims for payment from the assets of [the failed bank], (2) actions for payment from those assets and (3) actions for a determination of rights with respect to those assets." *Rosa*, 938 F.2d at 393.

■ Given the fact that SS & R seeks a determination that its claim should be accorded preferred administrative status, we must conclude that we lack jurisdiction to grant SS & R the relief it seeks, since SS & R requests a determination of rights with respect to MRSB's assets. We recently held that such actions are barred if the claimant has failed to follow the statutory claims procedure in 12 U.S.C. § 1821(d). *See Id.* Because *Rosa* is a case of recent vintage, however, and it is not precisely on point for the issue before us, we will explore in detail why SS & R's valid state law lien cannot be enforced against the FDIC under these circumstances.

### C.

We begin by reviewing three decisions of other courts that have confronted the problem of law firms asserting retaining liens over the files of a client/failed banking institution in receivership. The three cases are: *Resolution Trust Corp. v. Elman*, 761 F.Supp. 245 (S.D.N.Y.1991), *Re First City Nat'l Bank & Trust Co.*, 759 F.Supp.

---

**2.** Section 1821(d)(13) reads:
(D) *Limitation on judicial review*
Except as otherwise provided in the subsection, no court shall have jurisdiction over—
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution of the [FDIC] as receiver.
12 U.S.C. § 1821(d)(13)(D).

1048 (S.D.N.Y.1991), and *Federal Land Bank v. Federal Intermediate Credit Bank,* 128 F.R.D. 182 (S.D.Miss.1989). Two of the cases, *Elman* and *First City,* are similar in fact and law to the case at bar. The third, *Federal Land Bank,* involved a different statutory and regulatory scheme, but is included in our discussion because the district court in this case relied on it. In all three cases, the court ordered the law firm to turn over the files on which it asserted a retaining lien. The parties have cited no case decided by a court of appeals involving this factual scenario, and we can find none ourselves.

In *Elman,* the United States District Court for the Southern District of New York granted the RTC a preliminary injunction which ordered a law firm to surrender legal files over which the firm asserted a retaining lien. Rejecting the firm's claim that a valid retaining lien under state law is sufficient to permit the firm to retain the bank's legal files until it receives payment, the court concluded that the only forum in which the firm could litigate its claim for fees was the one established by FIRREA at 12 U.S.C. § 1821(d).

The court noted that in addition to establishing an administrative procedure to resolve claims, FIRREA withdrew jurisdiction to resolve claims in any other forum. Since the law firm's claim for fees was essentially a claim on the failed bank's assets, and the district court was not the forum identified in FIRREA as the one to resolve the firm's claim in the first instance, the court concluded that it lacked the power to resolve the firm's claim for fees. The court therefore entered an injunction ordering the firm to turn over the files because the RTC would be seriously prejudiced by being denied access to them.

*First City,* involved similar facts and law. As in *Elman,* a law firm had a valid retaining lien under New York law over a failed bank's legal papers and a charging lien over certain judgments the firm had collected on the failed bank's behalf. The district court there ordered the law firm to turn over the files because the court found that the firm's claim for fees could be resolved through the administrative procedure established by FIRREA under 12 U.S.C. § 1821(d). While the FDIC could show great prejudice in being denied access to the failed bank's legal files, the firm could not show that it would be prejudiced by submitting its claim to the FDIC in accordance with FIRREA. As in *Elman,* the court concluded that it lacked jurisdiction to grant the law firm the relief it requested, i.e. payment of its outstanding fees, because Congress withdrew jurisdiction from all courts for claims to the assets of a bank in receivership under FIRREA. *See* 12 U.S.C. § 1821(d)(13)(D). The court also determined that the claims procedure established by FIRREA passed constitutional muster in that the court rejected the law firm's argument that the statute denied it of a property right without due process of law.

*Federal Land Bank* involved the same factual scenario as *Elman, First City,* and this case, but the statute at issue there was different. For that reason, we do not think that *Federal Land Bank* is applicable. Nonetheless, we will discuss it because the district court considered it when it issued its order.

Payment of the creditors in *Federal Land Bank* was governed by 12 C.F.R. § 611.1174. That regulation specified that administrative expenses of receivership were entitled to first priority; claims of creditors that were secured with liens on "specific assets" received third priority; while general unsecured creditors were paid last (sixth priority). After examining the nature of the law firm's retaining lien, the district court determined that the legal files to which the law firm's retaining lien attached were not "specific assets" within the meaning of the applicable statutory scheme. The court therefore determined that the law firm was an unsecured general creditor. Because it was clear that there would be no money left to pay general creditors, and the bank's need for the files was manifest, the court ordered the law firm to turn them over without compensation to the law firm for the outstanding fees. Unlike the case at bar, the court in *Federal Land Bank* was empowered to

resolve the competing claims to the assets of the failed bank, while in cases arising under FIRREA, the FDIC is vested with that power.

### D.

Based on the exclusive character of the FIRREA procedure for resolving claims to the assets of a failed institution and the recent precedents recognizing that character, the FDIC argues that SS & R may not assert its claim for fees in any forum other than the one provided in section 1821. The FDIC insists that SS & R's claim is like any other claim and must be resolved through the procedure established by Congress in FIRREA. *See, generally, Rosa,* 938 F.2d at 396; *Elman,* 761 F.Supp. 245; *First City,* 759 F.Supp. 1048. In short, it is the FDIC's position that SS & R may not circumvent FIRREA's claim procedure merely by asserting a valid state common law lien, even though in almost every other circumstance, SS & R would prevail by summary disposition with such a lien. We agree.

In *Rosa,* we held that the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) extends to actions for a determination of rights with respect to a failed bank's assets. *Rosa,* 938 F.2d at 393–94. SS & R seeks to avoid this jurisdictional bar by arguing that its claim for attorneys fees and disbursements is an administrative expense associated with operating a failed institution in receivership, not subject to the claims procedure of section 1821. In SS & R's words,

> FDIC deems the prosecution of MRSB collection cases an administrative expense. It so pays [its new firm] for completing these cases. Yet [an attorney for the new firm] admitted in open Court that his firm would merely continue the actions commenced and prosecuted by SS & R. FDIC thus uses SS & R's work to reduce its administrative costs, requiring the latter to subsidize FDIC's receivership by some $70,000.00.

> SS & R is entitled to administrative priority because FDIC utilizes its attorney work product for an administrative purpose. *N.J.S.A.* 14A:14–20 empowers the Court to award receivership costs;

appellant contends its work, when used to administer the MRSB estate, constitutes such a cost. The identification of administrative costs and expense lies with a Court's sound discretion. *In re Kampelman,* 165 *N.J.Super.* 352, 398 A.2d 152 (Ch.Div.1979). No FIRREA provision states otherwise. That statute merely lays out a claims procedure which, when scrupulously adhered to by the Agency, may comport with *procedural* due process.

> Admittedly, the result might be different if FDIC put SS & R's work product to different use—or to no use at all.

Reply Brief of SS & R at 6 (emphasis in original).

In other words, SS & R believes that because the FDIC deems the prosecution of these cases an administrative expense, and the FDIC hired a new law firm to continue their prosecution, the legal work SS & R already performed on these matters is also an administrative expense. SS & R emphasizes that the new lawyers will only continue SS & R's work and will therefore free-load on all the hard work that SS & R did in creating the attorney work product contained in the disputed files. Indeed, SS & R conceded that its argument might fail if its work product were used differently or not at all.

In making this argument, SS & R dismisses as form over substance the distinction that it performed its work before MRSB went into receivership and that the new law firm is performing work after the MRSB receivership. SS & R contends that the distinction makes no difference because the legal work is exactly the same both before and after the receivership. Both before and after receivership, the law firm prosecuting these litigations is seeking to realize MRSB's assets. We disagree.

First, the distinction between pre- and post-receivership litigation expenses is not a distinction without a difference. The world changes when a bank goes into receivership. While in the pre-receivership world, a federally insured bank is subject to extensive regulation, it is generally free to conduct its business as it sees fit. After

receivership, however, the bank literally loses control of its own operations. A broad network of laws suddenly controls almost every aspect of the failed bank's operation.

■ Post-receivership litigation expenses might change substantially under the aegis of the receiver. For instance, pre-receivership, MRSB might have vigorously pursued a particular foreclosure. Post-receivership, it might make more sense for the bank to settle for a lesser sum in order to infuse cash into the bank. Indeed, the laws that affect substantial rights of the bank may change as a direct consequence of the bank having gone into receivership. *See, e.g., Adams v. Madison Realty & Dev., Inc.,* 937 F.2d 845 (3d Cir.1991) (claims of fraud in the inducement could not be raised against the RTC under 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine, even though the bank would have taken promissory notes subject to those claims if the RTC had not taken over the bank as receiver). To attempt then, as SS & R does, to fuse the pre- and post-receivership worlds is to ignore very substantial differences in how the bank operates and in what laws govern the substantial rights of parties litigating with the failed bank. Even SS & R conceded that its argument might fail if its work product were put to different use. Since we are aware of many circumstances where this might be the case, we must reject SS & R's argument that if post-receivership legal expenses are an administrative cost of receivership, then pre-receivership legal expenses are too.

Second, whatever amount MRSB owes SS & R for legal services accrued before the receivership. There is no logical way to attribute SS & R's legal bills to the administration of MRSB after receivership. SS & R's assertion is that because the underlying matters are the same, if litigation costs are administrative costs after receivership, then those costs should also be administrative before receivership. While SS & R might be correct about the character of legal expenses as administrative, that characterization is relevant only to the priority those costs will receive in the section 1821(d) claims resolution process. It is not relevant to the issue whether SS & R must submit its claim through that procedure in the first place. The whole point of receivership is to make creditors go after the estate as it existed on the day the failed bank was taken over. There is no reason that attorneys fees should be accorded special status and be paid out of post-receivership operating funds. We can plainly see that to give effect to SS & R's retaining lien, we would have to make a determination of rights with respect to MRSB's assets. Thus 12 U.S.C. § 1821(d)(13)(D) bars us from granting SS & R the relief it seeks.

E.

Apparently assuming that the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) does not apply to it, and that the statutory and regulatory scheme governing in *Federal Land Bank* governs this case too, SS & R next argues that it was a perfected and secured lien holder as a result of its retaining lien. For that reason, SS & R contends that its claim should be paid as a first priority administrative expense under New Jersey law. As discussed above, this line of argument will not help SS & R, since 12 U.S.C. § 1821(d)(13)(D) withdraws jurisdiction from court actions in which a party seeks a determination of rights with respect to a failed bank's assets. If we conclude that SS & R's claim must be processed through the procedure in section 1821(d), we have no power to determine how SS & R's claim should be characterized once submitted to the FDIC. Arguments concerning *Federal Land Bank,* 128 F.R.D. 182 are therefore misplaced. We will nonetheless examine them briefly.

SS & R claims that it is a secured creditor because it has a retaining lien on "specific assets." In an effort to distinguish its lien from the one in *Federal Land Bank* (which the court deemed not to be attached to a "specific asset"), SS & R describes the papers to which its retaining lien attaches. SS & R's argument is that the papers to which its retaining lien attaches are assets because the papers concern active litiga-

tions which the receiver must continue to prosecute in order to realize the value of the failed bank's assets. By contrast, the legal papers in *Federal Land Bank* did not concern litigation which could lead to the collection of debts owed to the bank. Once again, this argument is wholly irrelevant.

Even if it mattered whether SS & R's lien attached to "specific assets" (and it does not because the regulatory scheme and language applicable in *Federal Land Bank* are inapplicable here), it would matter only in determining what priority to accord SS & R's claim in the section 1821(d) claim resolution process. But at this juncture, neither the district court nor this Court has jurisdiction to examine the merits of SS & R's claim for fees. *See* 12 U.S.C. § 1821(d)(13)(D). The only question we can resolve now is whether SS & R is entitled to retain MRSB's files until it is paid. Obviously, they cannot because federal law has displaced state remedies concerning the manner in which a law firm can exact payment from nonpaying clients. We have specifically held that the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) extends to actions seeking a determination of rights with respect to a failed bank's assets. SS & R's effort to enforce its retaining lien makes this case such an action. The district court therefore acted appropriately in requiring SS & R to turn over the files and to prosecute its claim under the claims procedure established by section 1821.

### F.

■ SS & R's final argument is that requiring it to relinquish MRSB's files amounted to a deprivation of property without substantive due process. By substantive due process, SS & R means that it was deprived of its retaining lien without just compensation. The FDIC's response is that SS & R had no property interest in their client's legal papers. SS & R counters by arguing that its property interest was in the retaining lien itself, not the papers to which the lien attached. SS & R's argument then is that the FDIC deprived it of property without just compen-

sation when it sought an order requiring SS & R to turn over the files. We need not resolve this problem because if SS & R suffered a deprivation, it was when Congress passed FIRREA and preempted state law retaining liens. Since Congress clearly has the power to preempt state law, SS & R had no property interest to which a retaining lien was attached when the FDIC filed suit in this case. Hence, there is no basis for SS & R to claim that it was deprived of due process merely because the FDIC enforced the law that preempted the state law remedy (the retaining lien) that used to be available to law firms in SS & R's position.

### G.

■ The final question in this appeal is whether SS & R must exhaust its administrative remedy before it can receive a determination of its claim for fees. We must address this issue because the relief SS & R has requested is a ruling that its claim for fees should be treated as a preferred administrative status in the FIRREA claims process.

SS & R argues that it need not exhaust the administrative procedure to obtain a ruling on the status of its claim, because the administrative procedure and remedy is inadequate and futile in light of the FDIC's position that SS & R is a general creditor. Thus SS & R concludes that it can come directly to federal court for redress. If SS & R is correct, we have jurisdiction to determine the merit of SS & R's claim, notwithstanding the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D).

We must reject SS & R's argument, however, for several reasons. First, Congress expressly withdrew jurisdiction to resolve claims to a failed bank's assets from all courts, except as provided in 12 U.S.C. § 1821(d). *See* 12 U.S.C. § 1821(d)(13)(D). Thus we have no jurisdiction to determine the status of SS & R's claim. Second, we noted recently that the administrative procedure exhaustion requirement of FIRREA is statutory, not judicial. *Rosa*, 938 F.2d at 395. We are therefore not at liberty to ignore the statutory command.

### III.

Although SS & R has a valid retaining lien under New Jersey law, it cannot assert it against the FDIC because federal law has displaced state remedies in this area. SS & R must therefore submit its claim for fees to the FDIC according to the procedure established by FIRREA. The district court was therefore justified in requiring SS & R to return the files to which SS & R's retaining lien attached. We will therefore affirm the order of the district court in its entirety.